**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JASON J. WHITE,**       ) | |
|      **Plaintiff,**       ) | |
|       ) | |
| **v.**       ) | **Civil Action No. 07-1691** |
|       ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,**       ) | |
| **COMMISSIONER OF SOCIAL**       ) | |
| **SECURITY,**       ) | |
|      **Defendant.**       ) | |

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff Jason J. White ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment based on the record developed during the administrative proceedings. Doc. Nos. 9 & 10.

After careful consideration of the Commissioner's decision, the memoranda of the parties, and the evidence contained in the record, the Court finds that the decision of the Commissioner is "supported by substantial evidence" within the meaning of § 405(g). Therefore, the Court will deny Plaintiff's motion for summary judgment and grant the Commissioner's motion for summary judgment. The administrative decision of the Commissioner will be affirmed in accordance with the fourth sentence of § 405(g).

## II.    Procedural History

Plaintiff protectively filed applications for DIB and SSI on January 18, 2005, alleging

disability as of June 15, 2002.  R. 66.  These claims were denied by the state agency on June 3,

2005.  R. 48.  Plaintiff responded by filing a timely request for an administrative hearing.  R. 46.

On February 1, 2007, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law

Judge Douglas Cohen ("ALJ").  R. 325-350.  Plaintiff, who was represented by counsel,

appeared and testified at the hearing.  R. 327-350.  Sam Edelmann ("Edelmann"), an impartial

vocational expert, also testified at the hearing.  R. 347-349.  Plaintiff was insured for DIB

through March 31, 2004.  R. 19.

In a decision dated April 6, 2007, the ALJ denied Plaintiff's claims for DIB and SSI.  R.

14-24.  After noting that Plaintiff had not engaged in substantial gainful activity since his alleged

onset date, the ALJ found him to be suffering from bipolar disorder, Human Immunodeficiency

Virus ("HIV") and headaches.  R. 19.  Although these impairments were deemed to be "severe"

for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c),

they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P,

Appendix 1 ("Listing of Impairments").  R. 19-20.  In accordance with 20 C.F.R. §§ 404.1545

and 416.945, the ALJ made the following determination regarding Plaintiff's residual functional

capacity:

> After careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work, being able to
> only lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for
> about 6 hours in an 8 hour work day and sit for about 6 hours in an 8 hour work
> day, which is limited by his need to do only simple, routine, repetitive tasks
> (Exhibit 6F, p. 3), avoid interaction with the general public, and have only
> occasional interaction with supervisors and coworkers (Exhibits 4F and 5F).

R. 21.  Based on this assessment, the ALJ determined that Plaintiff could not return to his past relevant work as a delicatessen clerk, fast food cook or janitor.  R. 23.  At the time of the ALJ's decision, Plaintiff was 36 years old, making him a "younger person" under 20 C.F.R. §§ 404.1563(c) and 416.963(c).  *Id.*  He had a high school education.  *Id.*  Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Plaintiff could work as a store clerk, an office cleaner, or a hotel/motel cleaner.  *Id.*  Edelmann's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).  R. 347-348.  Accordingly, Plaintiff was not found to be "disabled" within the meaning of the Act.  R. 24.

The Appeals Council denied Plaintiff's request for review on October 11, 2007, thereby making the ALJ's decision the final decision of the Commissioner in this case.  R. 6.  Plaintiff subsequently commenced this action against the Commissioner, seeking judicial review of the Commissioner's decision.  Plaintiff and the Commissioner filed cross-motions for summary judgment on July 24, 2008, and July 25, 2008, respectively.  Doc. Nos. 9 & 10.  These motions are the subject of this memorandum opinion.

## III.    Statement of the Case

In his decision, the ALJ made the following findings:

1.    The claimant met the insured status requirements of the Social Security Act through March 31, 2004.

2.    The claimant has not engaged in substantial gainful activity since June 15, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: bipolar disorder, HIV positive, headaches (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

6.  The claimant was born on September 22, 1970 and was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

8.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 19-24. Plaintiff argues that the ALJ erred in assessing his credibility and residual functional capacity. Doc. No. 9-3, pp. 7-14.

**IV.  Standards of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district

---

[1] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a

court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing*

---

hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that

"substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,*

402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005);

*Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59

(3d Cir. 1988).

The United States Court of Appeals for the Third Circuit has referred to this standard as

"less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*,

312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and*

*Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the

substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing

evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*,

710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a

decision of an ALJ, yet avoid interference with the administrative responsibilities of the

Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the

evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at

552. In making this determination, the district court considers and reviews only those findings

upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the

medical record by supplying additional findings from its own independent analysis of portions of

the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d

34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to

consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails

to show that her impairments are "severe", she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399

F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not

currently engaged in gainful employment because she (2) is suffering from a severe impairment

(3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her

lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant

satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the

burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant

numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to

qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she

meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by

the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of

jobs in the national economy which the claimant is capable of performing may be considered

substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v.*

*Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala*

*v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to

VEs).[3]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical

questions include medical impairments, age, education, work experience and RFC); *Boone*, 353

F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory

testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical

questions to a vocational expert "often boil down to attacks on the RFC assessment itself."

*Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a

publication of the United States Department of Labor that contains descriptions of the

requirements for thousands of jobs that exist in the national economy, in order to determine

whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d

Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative

notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. §

416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant

DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination,

---

[3]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R.

§ 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but must set forth the reasons for his or her decision, and *specifically* explain why he or she found that the claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to his or her past employment or perform other substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical

13

evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37

14

(3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the

evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and

physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4] Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they must always be

---

[4]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling

("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and

XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail

the distinction between medical opinions entitled to controlling weight and those reserved to the

Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled

to controlling weight does not mean that the opinion is rejected. It may still be entitled to

deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical

opinion is not entitled to controlling weight or special significance because it is on an issue

reserved for the Commissioner,[5] these Social Security Rulings provide that, because an

adjudicator is required to evaluate *all* evidence in the record that may bear on the determination

or decision of disability, "adjudicators must *always* carefully consider medical source opinions

about any issue, including opinions about those issues that are reserved to the Commissioner,"

and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis

added). Moreover, because the treating source's opinion and other evidence is "important, if the

evidence does not support a treating source's opinion on any issue reserved to the Commissioner

and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator

must make 'every reasonable effort' to recontact the source for clarification of the reasons for the

---

[5]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## V. Discussion

In support of his motion for summary judgment, Plaintiff argues that the ALJ erred in determining his residual functional capacity. The crux of his argument is that the ALJ failed to properly consider the effect that his impairments had on his ability to work. Doc. No. 9-3, pp. 11-14. Having reviewed Plaintiff's arguments, the Court finds his arguments unconvincing.

Title II defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The language contained in Title XVI is not materially different from that contained in Title II. 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has construed this statutory language to mean that a claimant, in order to qualify for benefits, must not only have an *impairment* that can be expected to last for a year, but also an *inability to work* that can be expected to last for a year. 65 Fed. Reg. 42774 (2000). In *Barnhart v. Walton*, 535 U.S. 212, 214-222 (2002), the Supreme Court upheld the Commissioner's construction of the Act in accordance with *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The law has consistently recognized a clear distinction between the presence of a *potentially* disabling medical condition and the presence of a statutory disability. *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). The fact that one suffers from an *impairment* does not necessarily mean that he or she is *unable* to engage in substantial gainful activity.

Plaintiff argues that the ALJ improperly discounted his HIV-positive status and his chronic diarrhea. Doc. No. 9-3, pp. 7-14. A close examination of the record, however, reveals

that the ALJ adequately considered these impairments. At the hearing, Plaintiff testified as follows:

Q.    Let's talk about you've been diagnosed with HIV.

A.    Correct.

Q.    What kind of symptoms do you have?

A.    Those too are also seasonal. Wintertime, your legs hurt. Your arthritis is worse. Your glands get swollen. The second you step outside, you get half of a sore throat because you can feel your glands are swollen. And headaches goes along with having HIV. Night sweats, you'll wake up in the middle of the night soaking dripping wet and freezing cold. Nightmares sometimes that are things that you couldn't even dream up. And that's probably not the norm. You'll get probably three or four nightmares a year, but when you get one, you know it.

Q.    Okay.

A.    Nausea, vomiting sometimes, constant diarrhea every day of my life. I couldn't tell you what it's like to go to the bathroom like a normal person. Haven't done that in years.

Q.    And so when you say diarrhea, how often does that not–how often per day does that occur?

A.    Well, that depends on how much you eat. When you know you're going to be pooping up a storm, you don't eat. Example, you knew you had to be here this morning, no breakfast.

Q.    So in a typical day, how many times a day do you--

A.    At least four to six. Now, if you eat, you can go to the bathroom as many times as three or four before you're done with your meal.

Q.    It goes through that fast?

A.    Yeah.

Q.    And when you like–so when you have to use the bathroom, is it like–are you in there for a long time, or is it--

A.    It's usually not that you're there so long.  It's that you have to stop what you're doing and run to the bathroom.

Q.    And so--

A.    It's like you have to go, you have to go now.

Q.    And how long will you actually be in the bathroom for?

A.    5 to 10 minutes.  So I've gone out to dinner with my mother a few times, and dinner has actually taken an hour and a half instead of the 20 minutes it was supposed to take because we're in the bathroom.

R. 336-337.  The Court notes that Plaintiff himself referred to his HIV symptoms as "seasonal." While his impairment may have lasted (or may be expected to last) for the requisite 12-month period, his own testimony does not establish that his *inability to work* satisfied (or may be expected to satisfy) the statutory durational requirement.

In his opinion, the ALJ determined that Plaintiff's HIV infection did not meet the criteria for equivalency with Listing 14.08.  R. 20.  The Court agrees with that determination.  At the third step of the sequential evaluation process, it is not sufficient for a claimant to show that the overall functional impact of his or her impairments is as severe as that of a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531-532 (1990).  Instead, he or she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Id.* at 531.  Plaintiff does not argue that he can surmount this hurdle.  Therefore, he cannot establish the existence of a *per se* disability on the basis of his HIV infection.

Since Plaintiff cannot establish the existence of a *per se* disability, it does not matter how an HIV infection would affect similarly situated individuals.  To obtain benefits under the Act, Plaintiff must show that his HIV infection is disabling *in his case*.  At the administrative level,

the Commissioner is required to assess a claimant's work-related capacity on a function-by-function basis. *Santiago v. Barnhart*, 367 F.Supp.2d 728, 733 (E.D.Pa. 2005). This is how one's residual functional capacity is determined. "Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairments." *Pearson v. Barnhart*, 380 F.Supp.2d 496, 505 (D.N.J. 2005). Impairments which do not result in functional limitations are irrelevant to the inquiry.

Plaintiff makes no attempt to explain how his impairments result in a greater degree of functional limitation than that found by the ALJ. Instead, he advances generalized arguments concerning the effect of his impairments on his ability to work. In the present context, that does not suffice. What matters is whether the ALJ's residual functional capacity assessment, and corresponding hypothetical question to Edelmann, failed to account for credibly established limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Plaintiff fails to identify a limitation that was left unaccounted for by the ALJ.

The ALJ's findings, of course, must be "supported by substantial evidence" in order to be "conclusive" for purposes of this case. 42 U.S.C. § 405(g). Having reviewed the evidence in detail, the Court finds that the ALJ's findings met this standard. The record indicates that, as of July 25, 2005, Plaintiff's HIV infection was asymptomatic. R. 249. On July 17, 2006, Dr. Peter Veldkamp reported that Plaintiff's HIV infection was well controlled. R. 307. Although Plaintiff suffered from frequent headaches, a treatment noted dated February 15, 2006, indicated that his headaches were controlled by medication. R. 292. Moreover, on April 3, 2006, it was noted that while Plaintiff continued to have diarrhea once or twice per day, he was not bothered by it. R. 298. The ALJ relied on all of this documentary evidence in determining Plaintiff's

residual functional capacity.  R. 22.  It was certainly the prerogative of the ALJ to resolve any conflicts between the documentary evidence and Plaintiff's testimony.  *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985).  Under these circumstances, the Court has no basis for disturbing the findings made by the Commissioner at the administrative level.

As the ALJ acknowledged, Plaintiff suffers from bipolar disorder, which results in nonexertional limitations.  Where a claimant suffers from both exertional and nonexertional limitations, there is a particularly acute need for an accurate residual functional capacity assessment.  *Burnam v. Schwieker*, 682 F.2d 456, 458 (3d Cir. 1982)("The fact that work exists in the national economy for a person who *only* has Burnam's exertional impairments, or for a person who *only* has his nonexertional impairments, does not mean that work exists in the national economy for a person who suffers from *both* types of impairments simultaneously.")(emphasis in original).  The record indicates that Plaintiff was involuntarily committed pursuant to 50 PA. STAT. § 7302 when he was a teenager, apparently because of suicidal ideation.  R. 113-114.  Nevertheless, he did not need to continue with psychiatric treatment between that incident and his alleged onset of disability.  On September 20, 2004, Dr. Alicia Kaplan reported that Plaintiff was not receiving psychiatric treatment for his bipolar disorder.  R. 265-267.  Although Plaintiff later sought psychiatric treatment, the record lacks medical documentation of a disabling mental impairment.

Dr. Arlene Rattan performed a consultative psychological examination of Plaintiff on April 26, 2005.  R. 110-118.  She found Plaintiff to be only slightly limited in his ability to interact appropriately with the general public, co-workers and supervisors, and to respond appropriately to work pressures and changes in a usual or routine work setting.  R. 111.  The ALJ

incorporated these limitations into Plaintiff's residual functional capacity by limiting him to simple, routine, repetitive tasks involving no interaction with the general public and only occasional interaction with co-workers and supervisors. R. 21, 347-348. This assessment is amply supported by the evidence of record, and the Court will not disturb the findings of the ALJ concerning Plaintiff's nonexertional limitations.

Plaintiff takes issue with the ALJ's determination that he was capable of performing work at the light exertional level. The applicable regulations define "light work" as follows:

> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).[6] At the hearing, Plaintiff testified that he could probably

---

[6]In his opinion, the ALJ specified that Plaintiff was only able to sit, stand or walk for 6 hours in an 8-hour workday. R. 21. In his hypothetical question to Edelmann, the ALJ simply limited Plaintiff "to simple, routine, repetitive tasks not involving interaction with the general public, and only occasional interaction with supervisors and coworkers." R. 347-348. In order for a vocational expert's testimony to constitute "substantial evidence" that jobs exist in the national economy that are consistent with the claimant's residual functional capacity, the ALJ's hypothetical question must include all of the claimant's limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). In this case, however, Plaintiff does not raise the issue of the adequacy of the ALJ's hypothetical question to Edelmann. Instead, he focuses his arguments solely on the accuracy of the ALJ's residual functional capacity assessment. Moreover, even if Plaintiff were attacking the ALJ's hypothetical question, a remand would not be warranted. Vocational experts, of course, are aware of the definition of the term "light work." By using that term in his hypothetical question, the ALJ incorporated the definition of "light work" appearing in the regulations. "To perform the full range of light work, a person must be able to work on his feet for up to two-thirds of the work day." *Feliciano v. Chater*, 931 F.Supp. 215, 220 (S.D.N.Y. 1996). The ALJ found Plaintiff to be capable of standing or walking for up to three-fourths of an

lift or carry an object weighing as much as 50 pounds, as long as he did not have to carry it very far. R. 340. He also testified that he could stand or walk for only about an hour to 90 minutes, but the ALJ did not believe him to be as limited in this regard as he had alleged. R. 22, 339. Plaintiff points to no documentary evidence which indicates that he was as limited in his ability to stand and walk as alleged in his testimony. Indeed, he even acknowledged in his testimony that his symptoms were only severe during the winter months. R. 339. Even if Plaintiff's testimony was taken at face value, it is doubtful that he could satisfy the Act's 12-month durational requirement concerning an *inability* to engage in substantial gainful activity. *Walton*, 535 U.S. at 214-222. Accordingly, the ALJ's conclusion that Plaintiff was capable of engaging in substantial gainful activity is "supported by substantial evidence" for purposes of § 405(g).

## VI. Conclusion

The ALJ's findings are supported by the evidence contained in the record, and Plaintiff's generalized arguments concerning his impairments are untethered from the specific functional limitations that the Commissioner must consider in determining a claimant's residual functional capacity. Therefore, the administrative decision of the Commissioner will be affirmed. An appropriate order will follow.

s/ Arthur J. Schwab

Arthur J. Schwab
United States District Judge

cc:     All counsel of record

---

8-hour workday. R. 21. This finding was more than sufficient to satisfy the regulatory definition of "light work," which was incorporated by reference within the ALJ's hypothetical question to Edelmann. Consequently, Edelmann's testimony was not defective.